IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES JONES, NICOLE STEELS, )
and KAVON WARD, )
on behalf of themselves )    No. 09 C 6437
and all others similarly )
situated, )
)    Judge Charles R. Norgle
            Plaintiffs, )
)
        v. )    Magistrate Judge
)    Arlander Keys
NATIONAL COUNCIL OF YOUNG )
MEN'S CHRISTIAN ASSOCIATIONS )
OF THE UNITED STATES OF )
AMERICA ("YMCA OF THE USA"), )
an Illinois not-for-profit )
corporation, and ELINOR HITE, )
former Senior Vice President )
of YMCA of the USA )
)
            Defendants. )


## MEMORANDUM OPINION AND ORDER

Plaintiffs, James Jones, Nicole Steels and Kavon Ward,
allege race discrimination by the National Council of Young Men's
Christian Associations of the United States of America (Y-USA)
and Elinor Hite, the former senior vice president of Y-USA
(collectively, the "Defendants").  In this putative class action,
Plaintiffs claim that Defendants engaged in a pattern or practice
of discriminating and retaliating against its African American
employees through compensation, performance reviews, promotions,
and terminations.

Currently before the Court are two motions regarding

discovery: 1) Plaintiffs' motion to compel contact information [ECF No. 84]; and 2) Plaintiffs' motion to limit Defendants' communications with class members [ECF No. 99]. In the motion to compel, Plaintiffs seek an order compelling Defendants to provide contact information, including names, addresses, telephone numbers, e-mail addresses, and social security numbers, of all Y-USA employees from 2004 to the present. In the motion to limit, Plaintiffs seek to bar all communications between putative class members and Defendants, including through their lawyers.

## I.   Plaintiffs' Motion to Compel Contact Information

### A.   Background Facts

On March 4, 2010, Plaintiffs served their first set of discovery requests to Defendants. (Resp. to Mot. to Compel at Ex. A.) In Document Request No. 4, Plaintiffs request information regarding all persons who were employed by Y-USA or sought employment or promotion at any time from January 1, 2004 to the present, including their names, race, home addresses, home telephone numbers, e-mail addresses, and social security numbers. (*Id.* at Ex. A, No. 4.(a), (b) and (g).) In response, on June 16, 2010, Defendants objected to the request as being "over broad and not reasonably calculated to lead to the discovery of relevant, admissible evidence as it is overbroad, in among other things, as to temporal scope; seeks information for all employees, regardless of position, supervisor, employment dates, whether

they ever received a performance evaluation, reason for termination, etc. ... seeks highly personal and confidential information not relevant to the lawsuit." (Mot. to Compel at Ex. A, p. 9.)

Without waiving their objection, Defendants produced an electronic list of the names, race (if known), job titles, salaries and any changes in salaries, compensation information, and performance evaluations of all Y-USA employees from January 1, 2005 to January 1, 2010. (Resp. at 2, 7.) Defendants also produced personnel files of various employees, redacting contact information and social security numbers. (*Id.*) Subsequently, Defendants provided this information for all employees from January 1, 2004 to January 15, 2011. (*Id.* at 7; Sur-Surreply at 2.) For purposes of this opinion, "employees" refers to all those employed by Y-USA from January 1, 2004 to January 15, 2011. In December 2010, Plaintiffs again requested the employees' home addresses, home telephone numbers, e-mail addresses, and social security numbers arguing that this information is discoverable. The parties participated in a Local Rule 37.2 conference, but were unable to come to an agreement. (Mot. to Compel at 2.)

Discovery is not bifurcated in this matter. [ECF No. 84] The fact discovery deadline is May 31, 2011. [*Id.*]

**B. Discussion**

Plaintiffs claim that they are entitled to employees' home

3

addresses, home telephone numbers, e-mail addresses, and social security numbers because the employees "have discoverable information relevant to Plaintiffs' pattern or practice claims." (Mot. to Compel at 3.) Plaintiffs allege that the contact information is necessary to contact witnesses as they develop evidence with regard to individual employment actions, investigate the case, and prepare a motion for class certification. (*Id.* at 1, 3.)

In response, Defendants argue that Plaintiff's request for contact information is premature and not likely to lead to discoverable information. (Resp. at 1-2.) In addition, Defendants argue that, even if the Court orders them to produce certain contact information, Plaintiffs are not entitled to the managers' contact information based on Rule 4.2 of the Illinois Rules of Professional Conduct or social security numbers of individual employees due to the sensitive and confidential nature of this information. (*Id.* at 8-9.) Finally, Defendants accuse Plaintiffs of requesting this information in order to collect data to be used to solicit more clients to sue the Y-USA. (*Id.* at 2.)

First, the Court considers whether the requested information is relevant, and thus, discoverable. Defendants argue that Plaintiffs' request is "not within the scope of legitimate discovery during the pre-certification stage, and courts

consistently decline to compel the production of names and addresses of putative class members at the pre-certification stage in Rule 23 cases." (Resp. at 1.) Merit and class fact discovery are not bifurcated in this case and thus, there is only one stage of discovery. *See* September 9, 2010 Order. The Court considers different, more limiting, factors when determining the scope of discovery during the pre-certification stage, because the parties will have the opportunity to conduct additional fact discovery after the class is certified. Therefore, the case law Defendants cite regarding and discussing pre-certification discovery is distinguishable. *See, e.g. Kernats v. Comcast Corp.*, No. 09-cv-3368, 2010 U.S. Dist. Lexis 20276 (N.D.Ill. Jan. 14, 2010) (While analyzing *pre-certification discovery* requests for all potential class members' contact information, the Court found that only the contact information for potential witnesses was discoverable.); *Robbins v. NCO Financial Systems Inc.*, No. 06-cv-116, 2006 WL 3833352, at *5 (N.D. Ind. Dec. 12, 2006) (acknowledging that relevancy is generally limited during the *pre-certification stage of discovery*). Since fact discovery is not bifurcated in this case, Federal Rule of Civil Procedure 26 applies to the scope of discovery here.

Rule 26(b)(1) states that the "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... [and is of] discoverable

matter." *Id.* Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F.Supp.2d 934, 945 (N.D.Ill.2006) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Even if relevant, discovery will not be allowed if the requesting party fails to show the need for the information, or if compliance with a request is unduly burdensome or oppressive, or where the harm of disclosure outweighs the need for the information. Fed. R. Civ. P. 26(b)(2)(c). The standard allowing broad discovery under Rule 26 does not take away Defendant's right to argue that discovery produced in this case is inadmissable later.

The court has broad discretion when reviewing a discovery dispute and "should consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson v. Avery Dennison Corporation*, 281 F. 3d 676, 681 (7th Cir. 2002) (internal cites and quotations omitted).

In this case, Plaintiffs claim that the requested data is necessary to discover information pertaining to their claims and defenses. Defendants respond that Plaintiff's assertion that all Y-USA employees have discoverable information is vague and unsupported. (Response at p. 1-2.) Plaintiffs argue that current and former Y-USA employees have information about how Y-USA treated African American employees and their white counterparts, which is relevant to their pattern or practice claims. (Mot. to Compel at 3.) Defendants do not argue that it would be burdensome for them to produce the requested contact information. Given the broad scope of discovery afforded by Rule 26, the Court finds that contact information for the employees is relevant, and thus, discoverable.

Next, Defendants argue that Plaintiffs should not receive the employees' contact information because Plaintiffs have alternative means of contacting putative class members. (Resp. at 5.) In support of this position, Defendants cite *Kernats*, 2010 U.S. Dist. Lexis 20276. However, the Court in *Kernats* states that "when analyzing pre-certification discovery requests such as this one, courts often consider whether the class-action plaintiffs would be unable to locate and interview any putative class members without discovery from defendants." 2010 U.S. Dist. Lexis 20276 at *6. As stated above, discovery is not bifurcated in this case. Therefore, the Court does not consider

whether Plaintiffs would be able to locate and interview putative class members without discovery from Defendants.

Provided the information sought meets the standard of relevancy described in the federal rules, the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 449-450 (N.D.Ill. 2006). The objecting party must show with specificity that the request is improper. *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D.Ind. 2002). Here, Defendants do not specifically provide a basis that Plaintiffs are not entitled to addresses, phone numbers or e-mail addresses. However, they do argue that social security numbers should not be turned over.

As for the social security numbers, the Court agrees that this highly confidential and sensitive information should not be produced under the circumstances in this case. Defendants' request to keep the social security numbers of its employees private is well-founded and Plaintiffs do not show good cause that this information is necessary. Initially, Plaintiffs requested social security numbers for all former and current Y-USA employees from January 1, 2004 to the present. Then later, limited their request to social security numbers "only for former employees" in case the address provided by Defendants is not current and Plaintiffs need to use a professional skip trace

service.  (Reply at p. 7.)  There are other ways to locate an employee and if Plaintiffs are unable to do so, they may address that issue with Defendants on a case by case basis.  The need to protect the privacy of the individual employees outweighs Plaintiffs' asserted need for those individuals' social security numbers.  Therefore, Plaintiffs' request for social security numbers is denied.

Defendants allege that Plaintiffs are attempting to use discovery as a means of soliciting additional clients and state that since filing this action, Plaintiffs' counsel has threatened to file a discrimination action on behalf of Hispanic employees and applicants, and has filed an EEOC charge against Y-USA on behalf of a Hispanic employee.  (Resp. at 7-8; Sur-Surreply at 5.)  Defendants argue that Plaintiffs are prohibited from using discovery to solicit new clients, and request that the Court deny Plaintiffs' request for information on this basis.  (*Id.*) Plaintiffs respond that these accusations are baseless and do not relate to the issue of whether the contact information is discoverable.  (Reply at 9-10.)  Defendants cite valid case law that states that pre-trial discovery is to enable parties to prepare for trial of existing claims, not to determine whether third parties may have similar claims.  *See e.g., Dziennik v. Sealift, Inc*, No. 05-cv-4659, 2006 WL 1455464 (E.D.N.Y May 23, 2006).  However, Defendants' concern does not convince the Court

to limit Plaintiffs' rights to discovery afforded by Rule 26.

Discovery of the employees' names, addresses, telephone numbers and e-mail addresses is discoverable information relevant to Plaintiffs' claims.  Defendants are to provide the last known address, telephone number, and e-mail address for the employees to Plaintiffs within ten days.  This information should be kept confidential subject to the protective order.  Plaintiffs' request that the Court compel social security numbers is denied.

Finally, Defendants argue that Plaintiffs' request for current management employees' contact information is futile because Rule 4.2 of the Illinois Rules of Professional Conduct prohibits attorney communications with managerial employees. (Resp. at 9-11.)  Plaintiffs respond that this issue is neither relevant to the request in their motion to compel, nor ripe for resolution.  (Reply at 9.)  In addition, Plaintiffs invite Defendants to provide them "with a list of all managers who they assert exercise managerial authority under Rule 4.2." (*Id.*)  In their sur-reply, Defendants state that they will not provide this list as the request is "wholly premature as the parties have not held a Rule 37.2 conference regarding this issue." (Sur-Reply at 10.)  The Court's above ruling in no way allows Plaintiffs to violate the Illinois Rules of Professional Conduct.  Plaintiffs' communications with managers is a separate issue from the current motion and is not ripe for resolution at this time.  If the

parties have a disagreement regarding whether Plaintiffs may communicate with managers who are members of the putative class, they are to conduct a Local Rule 37.2 conference in good faith, and file the appropriate motion if necessary.

## II. Motion to Limit Communications

In their motion to limit communications, Plaintiffs request that the Court bar all communications between putative class members and Defendants, including through their lawyers, during the pendency of this motion and in addition:

(1) to limit defendants' future communications with class members about this lawsuit to written communications approved by the Court;

(2) to prohibit defendants from soliciting releases from class members through communications not approved by this Court;

(3) to bar Y-USA from using any declarations or affidavits obtained prior to a ruling on this motion that may foreclose any class member from participating and/or recovering in this or any individual lawsuit;

(4) to order Y-USA to provide a list of prospective class members from whom releases, declarations or affidavits were solicited, their contact information, and a copy of all releases, declarations and affidavits presented to class members whether or not signed;

(5) to order Y-USA to issue corrective notice to ameliorate the effects of any misleading or coercive communications; and

(6) to order that prospective class members who provided Y-USA with releases, affidavits or declarations during the pendency of this lawsuit be given 60 days from the date of corrective notice during which they may rescind them.

In support of this motion, Plaintiffs argue that Defendants have

engaged in misleading and potentially coercive communications with putative class members. (Mot. to Limit at 2.)

Each side has the right to communicate with putative class members. *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 102 F.3d 869, 870 (7th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)). However, Federal Rule of Civil Procedure 23(d) authorizes the court to regulate communications with putative class members. "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100. Judicial intervention is justified only where there is "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101-02. Such intervention "should result in a carefully drawn order that limits speech as little as possible consistent with the rights of the parties under the circumstances." *Id.*

Plaintiffs request that the Court intervene here, because Defendants' actions misled and potentially coerced employees into signing releases and declarations. First, Plaintiffs allege that Y-USA solicited releases that were misleading and potentially abusive from two former employees. (Mot. to Limit at 2-4.) Plaintiffs claim that Defendants solicited the two "releases

without providing objective information about the underlying lawsuit and how potential class members' potential rights in the lawsuit would be impacted by signing the release." (*Id.* at 6.) Plaintiffs attach declarations signed by the two former employees, setting forth their version of the circumstances in which they signed the releases. (*Id.* at Ex, A, D.) Defendants respond that their use of releases has been appropriate and does not interfere with putative class members' rights. (Resp. at 10.) Specifically, Defendants claim that Plaintiffs' argument regarding the two releases is a red herring as the two releases are unrelated to this case or Defendants' efforts to obtain declarations in this matter. (*Id.*) Defendants also argue that the releases were proper and that no coercion occurred. To support this position, Defendants point to the fact that the former employees signed the releases, which stated that they voluntarily agreed to the terms without coercion or force of any kind. (*Id.*) According to Defendants, one of the releases even allowed a seven day revocation period. (*Id.* at 11.) In addition, in response to Plaintiffs' assertion that the former employees were not informed of this pending lawsuit, Defendants attach the e-mail sent out by the President and CEO of Y-USA in November 2009, prior to the dates the releases were signed, to all Y-USA employees informing them that "two former employees, James Jones and Nicole Steels, have filed a civil lawsuit against

Y-USA, alleging discrimination on the basis of race." (*Id.* at 11, Ex. F.)

"[T]o the extent that the district court is empowered ... to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened." *Gulf Oil*, 452 U.S. at 102 (citing *Coles v. Marsh*, 560 F.2d 186, 189 (CA3), cert. Denied, 434 U.S. 985 (1977)). Plaintiffs fail to present sufficient evidence that Defendants coerced or misled the two former employees to justify the limitations requested. Therefore, the Court does not find that Plaintiffs' argument regarding the releases shows that it is necessary or appropriate to impose the proposed limitations on Defendants or their attorneys' communications with putative class members.

Next, Plaintiffs argue that Defendants' solicitation of declarations from class members is improper, as they may be used to "limit Defendants' liability and limit class members' potential rights." (Reply at 5.) Defendants admit, in their response brief, that they are and have been collecting declarations of employees to be used in this case, and have produced these declarations to Plaintiffs. (Resp. at 5-6; Reply at 15.) However, Defendants argue that Plaintiffs do not and cannot allege that any of the individuals from whom Defendants

obtained declarations were coerced.  (Resp. at 5.)  Defendants
state that, when attempting to obtain declarations, they "went to
great lengths to ensure that no employee felt that he or she had
to cooperate with Defendants' counsel either by talking to
counsel or providing a declaration."  (*Id.*)  Defendants provide
examples of these efforts by providing Sample Voluntary
Statements that they have provided to employees prior to
interviewing them.  (*Id.* at Ex. C.)  This Voluntary Statement
includes an acknowledgment, to be signed by the potential
declarant, that their participation was voluntary and allows them
the right to end the interview, stating that "no action will be
taken against you if you decline to participate."  (*Id.*)  The
Voluntary Statement also includes a warning that the declarant is
a potential member of the purported class and that the
interviewer does not represent the potential declarant.  (*Id.*)
Plaintiffs do not respond with any specific instances of coercion
related to the declarations, but instead argue that the employee-
employer relationship has an inherent potential for coercion.
(Reply at 5-8.)

"[T]he mere possibility of abuses does not justify routine
adoption of a communications ban that interferes with the
formation of a class or the prosecution of a class action in
accordance with the Rules." *Gulf Oil*, 452 U.S. at 104.  Moreover,
without a showing of actual harm, there must be some other

evidence that justifies interfering with Defendants'
communications. *See Wiginton v. C.B. Richard Ellis*, No. 02-cv-
6832, 2003 WL 22232907, at *3 (N.D. Ill. Sept. 16, 2003)
(citations omitted). Although an at-will employee-employer
relationship can produce a potential for coercion, the existence
of an employee-employer relationship alone is not enough to
justify restricting Defendants communications. *See Wiginton*,
2003 WL 22232907 at *2; *McLaughlin v. Liberty Mut. Inc. Co.*, 224
F.R.D. 295, 298-99 (D. Mass 2004). Based on the information
presented, the Court does not find that defense counsel engaged
in coercive behavior to obtain declarations from putative class
members. In fact, Defendants have implemented methods to attempt
to diminish the potential for coerciveness. Plaintiffs do not
show any actual or imminent abuse by Defendants. Therefore,
there is no reason to limit Defendants or their attorneys in
their communications with putative class members.

Finally, Plaintiffs argue that Defendants' communications
with putative class members should be limited because Plaintiffs'
communication has been limited, as Defendants refused to produce
employees' contact information. (Reply at 8.) First, this is
not a basis for limiting communications under Rule 23. Second,
the above ruling allows Plaintiffs access to employees' contact
information, and thus, that issue is resolved.

The Court need not consider Plaintiffs' specific proposed

limitations as Plaintiffs' arguments do not justify limiting Defendants' communications. However, the Court notes the proposed relief is extreme. The relief sought should be consistent with the policies of Rule 23, giving explicit consideration to the narrowest possible relief which would protect the respective parties. *Gulf Oil Co.*, 452 U.S. at 102. The proposed relief is broad and overreaching.

### Conclusion

For the reasons set forth above, Plaintiffs' motion to compel contact information [ECF No. 84] is granted in part and denied in part. Defendants are to provide the last known address, telephone number, and e-mail address for the employees from January 1, 2004 to January 15, 2011 to Plaintiffs within ten days. This information should be kept confidential subject to the protective order, and is not to be used to solicit new clients. Plaintiffs' request for social security numbers is denied. Plaintiffs' motion to limit Defendants' communications with class members [ECF No. 99] is denied.


Dated: March 31, 2011

ENTERED:

_Arlander Keys_
ARLANDER KEYS
United States Magistrate Judge