IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES JONES, NICOLE STEELS, and KAVON WARD, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>NATIONAL COUNCIL OF YOUNG MEN'S CHRISTIAN ASSOCIATIONS OF THE UNITED STATES OF AMERICA ("YMCA OF THE USA"), an Illinois not-for-profit corporation, and ELINOR HITE, former Senior Vice President of YMCA of the USA<br><br>      Defendants. | No. 09 C 6437<br><br>Judge Charles R. Norgle<br><br>Magistrate Judge<br>Arlander Keys |

## **MEMORANDUM OPINION AND ORDER**

Currently before the Court is Plaintiffs' motion to compel [#133]. Plaintiffs request that the Court compel Defendants to (1) produce certain documents which Defendants have designated as privileged; (2) fully answer Plaintiffs' Interrogatory No. 2 from their Third Set of Discovery Requests; and (3) provide documents in response to Plaintiffs' Document Requests 34 and 35 from their Third Set of Discovery Requests. For the reasons set forth below, the motion is granted in part and denied in part.

## I. Documents

First, the Court addresses Plaintiffs' request that certain documents designated as privileged be produced. Defendants have provided these documents to the Court and an *in camera* review has been conducted.

### A. The Presentation to the Y-USA Board of Directors

Defendants designated an October 22, 2008 PowerPoint presentation (the "Presentation") as privileged based on the attorney-client privilege and the work product doctrine. This Presentation was prepared by Y-USA's Office of the General Counsel and distributed to the Y-USA's Board of Directors in Executive Session. In the Presentation, the General Counsel summarizes, among other things, an August 2008 report by the firm Crowe Horwath LLC., which analyzes employment data at Y-USA with respect to race. Defendants state that this 2008 study was conducted "by an independent consulting firm, at the request of Y-USA's legal counsel, for purposes of rendering legal advice to Y-USA in an effort to evaluate and defend against charges of discrimination filed by Plaintiffs." (Resp. at 5.) Defendants add that the Presentation includes the mental impressions of Defendant Y-USA's General Counsel.

Plaintiffs request that the Court compel production of the Presentation. Plaintiffs do not argue that the Presentation was mis-designated as privileged; instead, they contend that

Defendants waived any privilege when they disclosed the Presentation to third-parties, the twenty-seven members of the Y-USA Board of Directors. In response, Defendants argue that, when applied to corporations, the attorney-client privilege encompasses certain employees of the client, including in this case, the Board of Directors.

When the party is a corporation, the scope of the attorney-client privilege may extend to corporate decision makers or those who substantially influence corporate decisions. *Upjohn Co. v. United States*, 449 U.S. 383, 390-93 (1981). When determining if certain communications fall within the attorney-client privilege, the Court is to determine the extent of the privilege on a case-by-case basis, taking into consideration whether the communications were made with the intent of providing legal advice, whether the communications concerned matters within the scope of the employees' duties, and whether the employees were well aware that the information was being used for providing legal advice. *Id.* at 396-97; *Rager v. Boise Cascade Corp.*, No. 88 C 1436, 1988 WL 84724 , *2-3 (N.D. Ill. Aug. 5. 1988). Here, the Court finds that the communication satisfy these factors and the Board of Directors fall within the attorney-client privilege. Thus, Defendants did not waive the privilege by providing the Presentation to the Board of Directors.

Next, Plaintiffs argue that any privilege was waived because

one non-attorney and non- Board Member, plaintiff Nicole Steels, saw the document in Y-USA's offices during the regular course of her work. In her declaration, Ms. Steels states that she "read a document addressed to Y-USA Board of Directors that was left on one of the office copy machines." Ms. Steels does not claim that Y-USA directly distributed the Presentation to her or that it was intended for her. This inadvertent disclosure does not rise to the level of waiver.

Finally, Plaintiffs ague that they have "substantial need" for the Presentation. A party seeking documents that are protected by the work-product doctrine can overcome this privilege by demonstrating "substantial need," and that they cannot obtain "substantially equivalent" information by other means "without undue hardship." Fed. R. Civ. Pro 26(b)(3)(ii). Plaintiffs contend that they need the Presentation to establish a "combination of knowledge and denial" by the Board of Directors. However, Plaintiffs do not argue that they cannot acquire the same or similar information to that contained in the Presentation through their own efforts. Nor do Plaintiffs assert that obtaining this information would be unduly burdensome. Defendants have provided performance evaluations and salary information for employees for the time period of January 1, 2004 through December 31, 2010. Therefore, Plaintiffs' request that the Court compel Defendants to produce the Presentation, based on

4

their substantial need, is denied.

### B. Vantage Solutions LLC Study

The second document at issue is a study that Y-USA commissioned from a consulting firm called Vantage Solutions LLC. That study, called the "Y-USA Salary and Performance Review, Analysis and Recommendations" (the "Vantage Study"), is dated March 2, 2009, and marked "confidential." Plaintiffs argue that the Vantage Study cannot be protected by the attorney-client or work product privileges, because it was identified, in Kent Johnson's deposition, as a document produced in the regular course of Y-USA's business. Kent Johnson, a Federal Rule 30(b)(6) witness who testified on behalf of Y-USA regarding its organizational structure and its policies and practices with respect to compensation, hiring, promotion, and the performance evaluation process, testified that an external consulting firm conducted the review process "as part of the annual review process."

Defendants indicate in their privilege log that the recipient of the Vantage Study was the Y-USA Legal Dept. Plaintiffs allege that Mr. Johnson's deposition testimony shows that the Study was more widely-disclosed, broadly used, and not created in anticipation of litigation. Defendants respond that Plaintiffs misconstrue the testimony of Kent Johnson. The Court has reviewed Mr. Johnson's testimony and the Vantage Study.

Based on this information, there is no indication that the Vantage Study was provided to persons outside the legal department or to individuals who did not have input for purposes of making decisions regarding Y-USA's salary and performance structures. In addition, though Mr. Johnson testified that the Vantage Study was used as part of the annual review process, he did not testify that the Study was not conducted for the purpose of rendering legal advice to Y-USA about salary and performance or the annual review process. Specifically, Mr Johnson testified that he does not know whether the Study was prepared at the direction of attorneys. Therefore, Plaintiffs' request to compel the Vantage Study is denied.

### C. Investigative Reports Regarding Nicole Steels' Complaint

The law firm of Ogletree Deakins compiled a report and an update to that report (jointly the "Investigative Reports") regarding its investigation of Plaintiff Nicole Steels' internal complaint. Defendants claim that both the attorney-client privilege and the work product doctrine apply to these documents. Defendants state that they hired Ogletree Deakins as investigators and legal counsel and that the Investigative Reports render legal advice to Y-USA on how to address the internal complaint.

The Investigative Report includes witness interviews, findings, and recommendations. The attorney-client privilege

"does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). In their response brief, Defendants agree to produce the witness interviews and findings portions of the Investigative Reports to Plaintiffs. However, Defendants argue that they should not be compelled to produce the recommendations portion. Defendants contend that the portion of the Investigative Reports titled "Recommendations," which includes legal advice and strategy, is protected by the attorney-client privilege. The Court agrees that the portion titled "Recommendations" is protected by the attorney-client privilege.

Next, Plaintiffs claim that Defendants waived the attorney-client privilege by relying on the Investigative Reports in Affirmative Defense No. 6 of their answer to the Third Amended Complaint. Plaintiffs argue that, by relying on their actions to "prevent and promptly cure" discrimination as an affirmative defense, Defendants have put the Investigative Report directly at issue and transformed it into evidence that must be produced to the Plaintiffs. Plaintiffs also argue that by asserting, in their affirmative defense, that Plaintiffs failed to put Defendants on notice of discrimination, they have further shown the relevance of the Investigative Reports.

"The attorney-client 'privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation.'" *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, No. 09 C 1824, 2010 WL 1930116, at *6 (N.D.Ill. May 13, 2010) (quoting *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir.1995)). "Simply denying allegations doesn't amount to a waiver"; rather, for the privilege impliedly to be waived, the holder of the privilege must "use the privileged communications to attack the other side's case." *Robinson v. Morgan Stanley*, No. 06 C 5158, 2010 WL 1050288, at *5 (N.D. Ill. March 17, 2010). In this case, Defendants allege that they "promptly cure[d] any inappropriate behavior in the workplace" and that "Plaintiffs ... did not provide Defendants with notice of the alleged inappropriate behavior....and failed to take advantage of any preventative or corrective opportunities provided." However, Defendants do use the privileged communications to attack the other side's case. First, Defendants do not allege that they cured any alleged inappropriate behavior by accepting the recommendations of the attorneys included in the Investigative Reports. Instead, Defendants state that they intend to assert their affirmative defense without the information in the Recommendations portions of the Reports.

Next, it is unclear how either side would use the Recommendation Section to support or refute the defense that Plaintiffs did not provide Defendants with notice or take advantage of preventative opportunities. The findings or interview sections of the Investigative Reports may be relevant to this issue and Defendants have already agreed to produce those sections. Therefore, Plaintiffs' request regarding the Investigative Report is granted in part and denied in part. The witness interviews and findings sections are to be produced within three days, if they have not already been produced. However, Plaintiffs' request that the remainder of the document be produced is denied. If Defendants assert information from the Recommendations section of the Investigative Reports in support of their affirmative defense in the future, Plaintiff may renew their request that this information be produced.

## II. Interrogatory No. 2

Next, the Court considers Plaintiffs' request that Defendants be compelled to fully answer Interrogatory No 2, which states:

> Identify any person who was shown any part of a document listed on the privilege log, read any part of any document listed on the privilege log or who was given information that is contained in any document listed on the privilege log. For each instance, state the person(s) who received the information, the person(s) who provided the information, identify the document (or portion of the document) revealed, and identify the subject matter of the information revealed.

Plaintiffs state that they issued this interrogatory after they could not adequately identify two documents included in Defendants' original privilege log. Defendants have issued two revisions to their privilege log, which the Court has reviewed. Defendants object to the interrogatory on the basis of privilege and that it is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant, admissible evidence.

In support of their position, Plaintiffs cite *Parvati Corp v. City of Oak Forest*, No. 08 C 702, 2010 WL 4792649, at *2 (N.D. Ill. Nov. 18, 2010), stating that "a privilege log must identify the following information for each separate document: the date; the author and recipients, including their capacities; the subject matter of the document; the purpose for its production; and a specific explanation of why it is privileged." Plaintiffs do not show how Defendants have not satisfied this requirement in their privilege logs. The logs provided to the Court include the author, recipient, date, description, privilege asserted and production status of each document in which a privilege is asserted. Without specific examples of how the log is unsatisfactory, the Court will not order Defendants to more fully explain the basis for asserting privilege of the documents in their log. Plaintiffs' request that the Court compel Defendants to answer Interrogatory No. 2 is denied.

## III. Document Requests Nos. 34 and 35

Finally, the Court considers the third area of dispute between the parties – Plaintiffs' two requests seeking documents concerning the identity of individuals whom Y-USA has hired with the title of "consultant." In Document Request 34, Plaintiffs seek all documents that identify employees who work, or have worked, as consultants; and in Request 35, seek "all documents related to … retention as a consultant, including but not limited to their consulting contract and all internal and external communications related to their hiring as a consultant" for any former employee whom Y-USA has (subsequent to their employment at Y-USA) hired as a consultant.

Defendants object to both these document requests as ambiguous, over broad and not reasonably calculated to lead to the discovery of relevant admissible evidence. Plaintiffs argue that the documents sought in Document Requests 34 and 35 relate to primary allegations in their case – that Defendants discriminate against the putative class by hiring non-African Americans as consultants at higher rates of pay for doing the same job and for denying an African American the opportunity to work as a consultant with Y-USA. Defendants deny that Plaintiffs allege that they applied for a position as a consultant and were denied. Defendants also argue that the requests are over broad because the term "consultant" has been

11

used for independent contractors, not employees, by the Y-USA since 2008. Defendants argue that none of the putative class members fall into this definition of consultant, because the class definition consists of current and former "employees" of the Y-USA. Defendants further argue that this information is irrelevant, because individual consultants are "not subject to the same terms and conditions that employees are or were subject to," and thus not proper comparisons for this lawsuit.

The Court has reviewed the Third Amended Complaint. It is unclear from this operative Complaint how Plaintiffs intend to define consultants in their Requests. In the Third Amended Complaint, Plaintiffs make allegations involving the Y-USA hiring outside consultants (¶¶ 3, 112-133), Y-USA employees conducting consulting work to the YMCA local branches (¶¶ 24, 37), and employees who were rehired in the "consulting group" (¶ 266). Specifically, Plaintiffs allege, "African-Americans who were rehired, for example in the consulting group, often were paid less than their non-African-American counterparts despite their superior qualifications and experience." (¶ 266). Due to confusion regarding employees in the consulting group and outside consultants hired by the Y-USA, the Court finds Document Requests 34 and 35 to be ambiguous. Therefore, Plaintiffs are to amend these Document Requests and provide a definition of "consultant" to Defendants with the amended requests, as well as an

explanation as to why such information is relevant to any issue in the case.

In determining how to respond to the amended requests, Defendants are cautioned that the Court, pursuant to the Federal Rules of Civil Procedure, broadly permits parties in litigation to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Plaintiffs' request to compel Defendants to produce documents in response to Documents Requests 34 and 35, as presently worded, is denied.

Dated: May 3, 2011

ENTERED:

*/s/ Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge