JH

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES JONES, NICOLE STEELS, )
and KAVON WARD, )
on behalf of themselves ) No. 09 C 6437
and all others similarly )
situated, )
 )
 ) Judge Charles R. Norgle
 Plaintiffs, )
 )
 v. ) Magistrate Judge
 ) Arlander Keys
NATIONAL COUNCIL OF YOUNG )
MEN'S CHRISTIAN ASSOCIATIONS )
OF THE UNITED STATES OF )
AMERICA ("YMCA OF THE USA"), )
an Illinois not-for-profit )
corporation, and ELINOR HITE, )
former Senior Vice President )
of YMCA of the USA )
 )
 Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, James Jones, Nicole Steels and Kavon Ward, allege race discrimination by the National Council of Young Men's Christian Associations of the United States of America (Y-USA) and Elinor Hite, the former senior vice president of Y-USA (collectively, the "Defendants"). In this putative class action, Plaintiffs claim that Defendants engaged in a pattern or practice of discriminating and retaliating against its African American employees through compensation, performance reviews, promotions, and terminations.

Currently before the Court are two motions regarding

discovery: 1) Plaintiffs' motion to compel discovery on workforce data [ECF No. 201]; and 2) Plaintiffs' motion to compel responses to discovery issued on April 6, 2011 [ECF No. 203].

## I. Plaintiffs' Motion to Compel Discovery Regarding Electronic Workforce Data

In this motion, Plaintiffs request that the Court compel Defendants to respond to their discovery, in which they seek data reflecting factors and characteristics considered by Y-USA in determining compensation, performance ratings, and selections for promotions or terminations. Specifically, in Document Request No. 4, Plaintiffs request computer-readable databases of more than 15 categories of employee information. As for Interrogatories Nos. 1 and 2 and Document Request Nos. 7 and 8, Plaintiffs argue that Defendants should be compelled to inform them of the factors that "Defendants contend should be considered" in assessing or explaining the difference in treatment of white and black Y-USA employees. Mot. at Ex. 3. Plaintiffs also ask the Court to compel Defendants to produce all information in a computer-searchable spreadsheet or database format (e.g., Microsoft Excel). In addition, Plaintiffs seek an extension of the expert discovery deadlines.

### A. Document Request No. 4

With regard to Document Request No. 4, Plaintiffs ask the Court to compel Defendants to supply employees' supervisors' names, termination codes or reasons for termination, and

performance evaluation ratings. Defendants have produced documents in response to this Interrogatory and contend that the disputed portions of the request are duplicative and overly burdensome. The request is duplicative as Defendants have produced all known performance evaluations from 2004 to 2010, which contain the performance ratings and names of the supervisors who signed the reviews. Resp. at 3. In addition, Defendants have produced various spreadsheets that contain performance evaluation ratings for certain periods of time.

Plaintiffs complain that this information is not in one computer-readable database and request that the Court compel Defendants to produce this information in an excel spreadsheet. Plaintiffs also protest that some of the spreadsheets, produced by Defendants, seem to be incomplete or drafts. Defendants respond that they have produced the documents in the method in which Y-USA maintained these documents. Defendants also argue that it would be overly burdensome and it is not Y-USA's responsibility to "analyze, assemble and/or create a database of information Plaintiffs possess to facilitate Plaintiffs' experts' analysis." Resp. at 4.

Under Federal Rule of Civil Procedure 34, "A party must produce documents as they are kept in the usual course of business...." Fed. R. Civ. P. 34(b)(2)(E)(i). By producing the information requested in the format kept in the normal course of

business, Defendants have adequately responded to that portion of Request No. 4 regarding supervisors and performance ratings. Therefore, Defendants are not required to cull through the information that they have produced in order to create a new computer-searchable spreadsheet, fill in the missing information, or double check the accuracy of produced spreadsheets if the documents were produced in compliance with Rule 34.

Next, Plaintiffs claim that "Y-USA has already created these performance rating summaries as part of the normal course of business," but have not produced them. Reply at 2. If Defendants maintained information regarding employee ratings, managing supervisors, or any of the other information requested in Document Request No. 4 in a computer-searchable format in the normal course of its business, Defendants must produce those to Plaintiffs in that format even if Defendants previously produced the same information in a different document or format within ten days.

With regard to the termination codes, Defendants state that they "do not possess a database that includes **accurate** termination codes for all employees." Resp. at 5 (emphasis added). However, Defendants do not deny possessing a database that includes termination codes. Defendants are ordered to produce databases that include termination codes as they are kept in the normal course of business, if any. Inaccurate or

incomplete information included in relevant documents is not a basis for withholding relevant discovery. Federal Rule of Civil Procedure 26(b)(1) states that the "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... [and is of] discoverable matter." Fed. R. Civ. P. 34(b)(2)(E)(i). Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F.Supp.2d 934, 945 (N.D. Ill. 2006) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Defendants will have the opportunity to argue that the information included in the documents is inaccurate or incomplete during dispositive motion practice or at trial. However, Defendants are to produce relevant documents to Plaintiffs, if they exist, within ten days.

### B. Interrogatories Nos. 1 and 2 and Document Requests Nos. 7 and 8

Next, Plaintiffs request that this Court compel Defendants to fully respond to Interrogatories Nos. 1 and 2 and Document Requests Nos. 7 and 8. This discovery seeks "any demographic factors or other factors or characteristics **that Defendants contend should be considered**" in assessing or explaining the difference in treatment of white and black Y-USA employees and the related documents. Mot. at Ex. 3 (emphasis added).

Plaintiffs argue that they are entitled to this information, because in *Adams v. Ameritech*, "the Seventh Circuit explained that the employer bears 'the responsibility of offering alternative explanations' for disparities when it claims a statistical analysis suggesting discrimination failed to consider 'other non-racial variables [that] might have entered into the employer's calculus." Mot. at 3 citing *Adams*, 231 F.3d 414, 424 (7th Cir. 2000).

In response to these disputed discovery requests, Defendants produced a menu of "potentially available data fields, which consisted of literally hundreds of pages describing hundreds if not thousands of different data fields, many of which Defendants acknowledge are not even used by Y-USA." Mot. at 6. Defendants argue that they should not be compelled to more fully respond to these discovery requests, because there is no *prima facie* burden on them to offer alternative explanations for alleged racial disparities in pay, promotion, performance evaluation and termination, at this stage in litigation, when they do not believe disparities exist and Plaintiffs have not established that they do. Resp. at 6.

Plaintiffs' reliance on *Adams* as a basis to seek discovery responses to Interrogatories Nos. 1 and 2 and Document Requests Nos. 7 and 8 is misplaced. In *Adams*, the Seventh Circuit considered whether statistical evidence was admissible, and

discussed what the Court is to consider in relying on statistical evidence arguments at trial or during dispositive motions, not what statistical data is permissible discovery. *Adams*, 231 F.3d at 424. As discussed above, Plaintiffs requested more than 15 categories of statistical evidence in Document Request No. 4 and this Court allowed that discovery. In Interrogatories Nos. 1 and 2 and Document Requests Nos. 7 and 8, Plaintiffs seek Defendants' responses to Plaintiffs' accusation that discrimination occurred. At this point of litigation, the parties are conducting fact discovery, to be completed by August 30, 2011, and are beginning expert discovery. This case is not at the stage of litigation where Defendants have the burden to specifically respond to Plaintiffs' allegations that their statistical evidence proves discrimination with counter data. Therefore, Defendants are not required to respond to Plaintiff's accusations at this time by presenting them in the form of discovery responses.

Plaintiffs also argue that these discovery requests should be more fully answered in order to determine the workforce data Defendants consider relevant. Mot. at 6. Plaintiffs add that they are trying to "avoid a situation in which Defendants gave their experts one set of data and gave Plaintiffs another set of data or, equally problematic, a situation where Defendants give their experts supplemental or corrected data after Plaintiffs' experts issued their report. *Id.* at 7-8. However, Plaintiffs'

stated basis for these discovery requests and concern of unfair discovery are addressed and remedied by the Federal Rules of Civil Procedure. First, under Federal Rule of Civil Procedure 26(e), each party has a duty to timely amend and/or supplement their responses to discovery if they obtain additional information or know that a response was incorrectly made. In addition, Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose, in an expert report, facts or data on which its expert relies. See Fed. R. Civ. P. 26(a)(2)(B)(ii). And finally, the Court has given the Plaintiffs' experts an opportunity to draft rebuttal reports. Therefore, Plaintiffs concerns are unfounded. Plaintiffs' request that this Court compel Defendants to more fully respond to Interrogatories Nos. 1 and 2 and Document Requests Nos. 7 and 8 is denied.

### C. Expert Discovery Deadlines

Finally, Plaintiffs request that the expert discovery deadlines in this case be extended. On September 9, 2010, the Court set the following deadlines: Plaintiffs will disclose their expert witnesses (including expert reports), if any, by June 30, 2011 and shall present them for depositions within 30 days thereafter. Defendants shall disclose their expert witnesses (including expert reports), if any by August 15, 2011 and shall present them for depositions by September 15, 2011. Rebuttal expert reports for both parties to be submitted by October 15,

2011 and their depositions to be taken by October 31, 2011. [ECF No. 56]. Defendants oppose Plaintiffs' request for an extension. Plaintiffs do not provide any persuasive arguments as to why these deadlines should be extended, and they filed this motion on June 24, 2011, over nine months after the June 30, 2011 disclosure deadline had been set. Plaintiffs do not state in their Reply Brief whether they complied with the June 30th deadline. Plaintiff's request is denied, at this time, and the current expert discovery schedule stands.

## II. Motion to Compel Responses to Discovery Requests Issued on April 6, 2011

In their motion to compel responses to the April discovery, Plaintiffs seek responses to Interrogatory Nos. 3-5 and Document Request No. 5, served on April 6, 2011.

### A. Interrogatory No. 3

Interrogatory No. 3 requests that Y-USA identify all reductions in force ("RIF") and for each RIF state:

(1) the reason for the RIF;

(2) the person(s) who had input into the decisions to reduce the workforce and a description of the role of each of those persons, including a substance of the advice/contribution they made to the decision-making process;

(3) the person(s) ultimately responsible for the decision to reduce the workforce;

(4) the number of employees to be terminated in each RIF;

(5) a substantive description of how employees were assessed for termination in each RIF, for example if a process was used, such as a matrix, or certain criteria was examined,

and/or managers were asked to nominate someone from their department, etc.;

(6) the persons who had input into the decision about what process to use to identify employees who would be terminated as -part of the RIF and a description of the role of these persons, including a summary of the substance of the advice/contribution they made to the decision-making process;

(7) the persons who were involved in deciding which employees would be terminated as part of the RIF and a description of the role of each of these persons, including a summary of the substance of the advice/contribution they made to the decision-making process; and

(8) a list of all persons considered for termination in each RIF.

In response, Defendants objected that the request was over broad and unduly burdensome, among other objections. However, in addition, they responded by referring to documents that they had previously produced related to the RIFs. Plaintiffs state that these documents include "correspondence from Plaintiff James Jones's personnel file; miscellaneous separation letters; and various unidentified reports and spreadsheets." Mot. at 3. In their motion, Plaintiffs argue that the documents produced do not sufficiently answer Interrogatory No. 3.

After the motion to compel was filed, Defendants produced a spreadsheet to Plaintiffs, in response to Interrogatory No. 3, that contains: "the names of all individuals who were affected by a RIF during the relevant time frame; the date of each RIF; the employee's job title and department; and the reason for the RIF/job elimination." Resp. at 5. Defendants argue that their

previous production of the documents, combined with the information in the spreadsheet, is a sufficient response to Interrogatory No. 3.

Plaintiffs admit that the information in the newly produced spreadsheet does answer some portions of Interrogatory No. 3. However, Plaintiffs contend that Defendants still have not responded to subsections 2, 3, and 5-8 of the Interrogatory. Plaintiffs argue that "companies typically have lists of employees from each department being downsized and some objective analysis – a spreadsheet, a memo, something – that memorializes the reasons that one employee was chosen over another and which managers and/or Human Resource professionals were part of the decision." Reply at 3. However, Y-USA states that it does not maintain any such documentation of its RIF decisions. Defendants argue that the information that they have not provided, which would answer the portions of the interrogatory regarding the identity of "each and every individual who possibly contributed to the RIF process and/or decision, the specific input that each and every such individual provided regarding the process and/or decision, a description of the process that was followed for each and every job elimination decision, and each and every employee who was considered for termination is unduly burdensome." Resp. at 5.

Plaintiffs show that discovery regarding the names of all

individuals who were affected by a RIF during the relevant time frame, the date of each RIF, the employee's job title and department, and the reason for the RIF/job elimination is relevant information that may lead to admissible evidence in this case. However, there are limits to Federal Rule of Civil Procedure 33. When an interrogatory requires a party, as here, to engage in burdensome or expensive research into its own business records in order to give an answer, Rule 33(d) gives the party an option to make the records available and place the burden of research on the party who seeks the information if the burden of ascertaining the answer would be substantially the same for both sides. Fed. R. Civ. Pro. 33 (d). Here, Y-USA does not have the information requested, regarding who made each RIF decision or how each employee was assessed in these reductions, readily accessible or in one place. Defendants would need to examine their documents regarding RIFs in order to determine if the documents even included this specific information, a task which the Court will not require. However, pursuant to Rule 33(d), to the extent they have not already done so, Defendants are to produce within ten days any documents in their possession that may answer subsections 2, 3, and 5-8 of Interrogatory No. 3.

**B.    Interrogatory No. 4**

Neil Nicoli is the President and CEO of Y-USA. In Interrogatory No. 4, Plaintiffs request that Defendants "identify

12

by bates number or produce all documents provided to or reviewed by Neil Nicoll related to the performance evaluation process, the merit increase process or as part of any process related to an employee's compensation." Mot. at Ex. E, p. 5. In response, Defendants state that they have produced documents relating to performance evaluations, merit increases, and compensation. *Id.* In a supplemental response, Defendants reiterated that, as stated in his deposition, "Neil Nicoll cannot recall the specific documents he received and/or reviewed related to the performance evaluation and merit increase processes." *Id.* Additionally, Defendants identified specific examples of the types of documents and information Mr. Nicoll reviewed – both by description and bates number – during the performance evaluation and merit increase processes, and noted that as the performance evaluation and merit increase process changed from year to year, there were variations of such documents and information that Defendants believe Mr. Nicoll would have reviewed. *Id.*

During Mr. Nicoll's deposition on April 26, 2011, Plaintiff's counsel asked Mr. Nicoll to identify the specific documents he reviewed related to performance reviews and merit increases. Mr. Nicoll responded that he could not remember the specific documents. He informed Plaintiffs that he reviewed spreadsheets in connection with the performance reviews and merit increases; that "to the best of [his] memory," the spreadsheets

included "positions, merit rating[s], and the salary recommendation[s];" and that he did not have any current memory of seeing certain spreadsheet exhibits after reviewing them during an approximate 40 minute break but that it was "possible [he] could have." Resp. at Ex. A, Nicoll Dep. 165:19-166:19, 168:6-15.

However, Plaintiffs claim that Defendants should answer Interrogatory No. 4 more fully, despite Mr. Nicoll's lack of recollection, because it is not aimed at Neil Nicoll, but at Y-USA. Therefore, Plaintiffs argue that "it is not enough to ask Neil Nicoll, in a vacuum, if he remembers." Reply at 5. Plaintiffs contend that Y-USA needs to explore its documents and witnesses besides Mr. Nicoll in answering this interrogatory. For example, Plaintiffs claim that Mr. Nicoll's administrative assistant may recall all the documents that she passed on to Mr. Nicoll. *Id.* In response, Defendants state that Plaintiffs' request is grossly overbroad and unduly burdensome. Defendants contend that, because more than 80,000 documents have been produced in this case to date, it would be a "completely unreasonable, arduous, and speculative task for Defendants to identify every document that possibly could have been provided to Mr. Nicoll as part of the performance evaluation and merit increases processes or related to any other salary decision of any kind since his hire in June 2006." Reply at 8. The Court

agrees and finds that Y-USA's response to Interrogatory No. 4 is satisfactory as Y-USA produced documents and identified the types of documents Mr. Nicoll reviewed in connection with the review and compensation process. In addition, Plaintiffs had the opportunity to seek this information through deposition. Therefore, Plaintiffs' request that Defendants be compelled to more fully answer Interrogatory No. 4 is denied.

### c. Interrogatory No. 5

In Interrogatory No. 5, Plaintiffs seek the identities of "all Y-USA supervisors responsible for signing the performance review of another Y-USA employee and for each supervisor, identify the year(s) in which the supervisor was responsible for signing the performance review of another Y-USA employee." Mot. at 7. Defendants argue that the documents produced satisfy this Interrogatory, because the information sought can be culled from the performance reviews that have previously been produced. "Y-USA has provided known final, mid-year and draft performance reviews maintained for employees employed at Y-USA between January 1, 2004 and January 15, 2011." Resp. at 9. Defendants state that these performance reviews contain the name of the supervisor who was responsible for the review, as well as the period of review, and the name of the person being reviewed.

Plaintiffs argue that Defendants' response to Interrogatory No. 5 is insufficient because some supervisors did not complete

performance reviews, so the documents only capture "the supervisors who signed performance reviews, not the supervisors 'responsible' for signing performance reviews." Mot. at 7. Plaintiffs contend that both "Elinor Hite and Jackie Gordon testified that not all the supervisors assigned the responsibility of completing performance reviews actually did so (including Ms. Hite herself)." Id. Plaintiffs add that they need this information in order to make the distinction between managerial and non-managerial employees. Id. The information requested by Plaintiffs is relevant, and thus, discoverable.

According to the briefing, during the meet and confer process, Defendants claimed that they did not have additional information to provide to Plaintiffs, in response to this Interrogatory, beyond the performance evaluations. However, Plaintiffs requested that Defendants sign a statement setting forth this assertion, and according to Plaintiffs, Defendants declined to sign the statement. Reply at 7. As the information requested in Interrogatory No. 5 is discoverable under Federal rule of Civil Procedure 26, Defendants are to fully respond to Interrogatory No. 5 within ten days. If Defendants do not have a response beyond the documents already provided, they are to respond as such in writing.

### D. Document Request No. 5

In reviewing the Board of Directors meeting minutes produced

in this case, Plaintiffs "identified several additional documents mentioned in the minutes that they considered relevant." Mot. at 8. Plaintiffs then requested these documents and included the bates number for reference to these documents. Y-USA did not comply with this request, and Defendants issued Document Request No. 5 in an effort to obtain these documents.

In response, Y-USA produced some of the requested documents. Mot. at 8. In addition, Defendants responded by generally stating that the documents it did not provide are irrelevant or privileged. Resp. at 10. In their response brief, Defendants specify objections for only two documents requested. *Id.* at 11. In their reply brief, Plaintiffs include a two-page chart identifying the disputed documents by name and reference. Reply at 8-10. Since they have not previously done so, Defendants are to specifically respond to this chart by setting forth their basis for not producing each individual documents within five days. After Defendants have provided the specific objections, the parties are to meet and confer in order to determine if Defendants should produce each document.

### III. Conclusion

Plaintiff's motion to compel discovery regarding electronic workforce data is granted in part and denied in part. Defendants are to produce any additional documents responsive to Document Request No. 4 as ordered above, including spreadsheets that

include termination codes, within ten days. Plaintiffs' request that the Court compel Defendants to more fully respond to Interrogatories Nos. 1 and 2 and Document Requests Nos. 7 and 8 is denied. Plaintiffs' request for an extension of the expert discovery schedule is also denied.

Plaintiffs' motion to compel discovery issued on April 6, 2011 is granted in part and denied in part. Defendants are to produce any documents, in their possession, that may answer subsections 2, 3, and 5-8 of Interrogatory No. 3 within ten days. Plaintiffs' request that Defendants be compelled to more fully answer Interrogatory No. 4 is denied. Defendants are to fully respond to Interrogatory No. 5 within ten days. If Defendants do not have a response to Interrogatory No. 5 beyond the documents already produced, they are to respond as such in writing. Defendants are ordered to set forth specific objections for each document it has not produced in response to Document Request No. 5 within five days, and the parties are ordered to meet and confer regarding these objections.

Dated: July 28, 2011

ENTERED:

_Arlander Keys_
ARLANDER KEYS
United States Magistrate Judge